NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0018n.06
Filed: October 12, 2004
No. 03-6076

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SHARON DYKES, o/b/o LINDA A. BRYMER, deceased, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) | |
| Defendant-Appellee. | ) | |

Before: MARTIN, COLE, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Linda Brymer applied for social security disability insurance benefits (DIB) in 1998. After a hearing, an Administrative Law Judge (ALJ) found that Brymer could perform her past relevant work as a fast food supervisor and denied benefits. Brymer sought judicial review of the decision, and the district court affirmed the denial of benefits. Brymer appeals, arguing that the ALJ erred in failing to offer reasons for disregarding the findings of a doctor performing a consultative examination. Brymer requests that this court reverse or remand the decision denying benefits. For the reasons set forth below, we affirm the district court's decision.

**I.**

Linda Brymer was born in 1945 and had a high school education.[1] She worked as a back-line fast food supervisor at Hardee's until some point late in 1998 and did not work in any job afterwards. Her previous job is classified as light work for the purposes of the medical-vocational guidelines under 20 C.F.R. pt. 404, subpart P, app. 2. *See* 20 C.F.R. § 404.1567(b).

Brymer alleged that beginning October 15, 1998, she had a disabling condition entitling her to social security DIB. On her application for DIB, she listed numerous illnesses, injuries, and conditions that limited her ability to work, including high blood pressure as well as pain in her lungs, spine, stomach, and arms. At a hearing before an ALJ, Brymer alleged other impairments, including asthma, pulmonary disease, degenerative disc disease, diabetes, sleep apnea, depression, and panic disorder with agoraphobia.

Numerous doctors conducted medical examinations of Brymer over the relevant period of time for consideration of her disability claim. A summary of the notable examinations follows:

(a) Between January 1996 and January 2000, Brymer was treated at the Optima Health Center for bronchitis, asthma, hypertension, and other conditions. A letter from the Optima Health Center dated November 30, 1999, stated that Brymer had severe degenerative disc disease, arthritis, pulmonary disease and asthma.

(b) In April 1998, Brymer underwent surgery for removal of a cyst from her abdomen.

(c) Between October 1998 and August 1999, Thomas Fulbright, M.D., treated Brymer for back pain. Brymer underwent surgery for neck and back pain in October 1998. By

---

[1]Brymer died on April 26, 2002. The cause of death was listed as cardiopulmonary arrest, respiratory failure, and severe chronic obstructive pulmonary disease. Brymer's daughter Sharon Dykes prosecuted this case on behalf of her mother, but for the sake of convenience this opinion will refer only to Brymer.

August 1999, Brymer's neck pain was "much better," and she could move her cervical spine "without complaint."

(d)     From December 1998 to April 1999, Brymer was treated for psychological conditions at the Fortwood Center.

(e)     In January 1999, Thomas Mullady, M.D., performed a consultative examination of Brymer's back pain at the request of the Department of Human Services' Disability Determination Section.[2]  He made numerous observations, including that knee reflexes were absent, range of lower back motion was limited, and range of motion on the cervical spine was normal.  He noted Brymer's history of cervical disc disease, asthma, sleep apnea, pulmonary disease, diabetes, high blood pressure, and carpal tunnel syndrome.  He concluded that Brymer could frequently lift and/or carry up to ten pounds from one-third to two-thirds of an eight-hour workday.  Also, he reported that Brymer "would be able to stand and/or walk with normal breaks for a total of at least two hours in an 8-hour workday and would be able to sit with normal breaks for a total of about six hours in an 8-hour workday."

(f)     In February 1999 and May 1999, respectively, Drs. H.T. Lavely, Jr. and Louise Patikas prepared residual functional capacity assessments of Brymer based on a review of the records.  Both doctors reached the conclusion that Brymer could stand and/or walk for six hours in an eight-hour day and sit for six hours in an eight-hour day and that plaintiff

---

[2]"A consultative examination is a physical or mental examination or test purchased for [the claimant] at [the Agency's] request and expense from a treating source or another medical source...." 20 C.F.R. § 404.1519.

could frequently lift at least ten pounds. These conclusions contradicted Dr. Mullady's conclusions.

(g) From March to July 1999, Lynn Crosby, M.D., treated Brymer for a ruptured Achilles tendon. In July 1999, Dr. Crosby reported that Brymer felt "comfortable" walking with the help of a brace.

(h) In August 1999, Trina McLeod, M.D., prepared a medical source statement regarding Brymer's mental health. Dr. McLeod wrote that Brymer could not be relied upon to show up for a job on time on a consistent basis and perform adequately while present because of "social discomfort and withdrawal, impaired ability to maintain attention and unreliable ability to behave in an emotionally stable manner."

(i) From October to December 1999, Gregory Ball, M.D., treated Brymer for chronic back and neck pain. In a letter written one week before Brymer's hearing in December 1999, Dr. Ball wrote that due to Brymer's "chronic pain," it would be "difficult for [her] to find any form of full-duty permanent employment."

(j) In November 1999, Dr. A. Supan prepared a medical source statement regarding Brymer's mental health, stating that Brymer was "apt to have difficulty functioning in an occupational setting due to physical problems."

After Brymer's hearing, the ALJ determined that she had the residual functional capacity to perform light exertional work - in other words, that she could still do her previous job.[3] *See*

---

[3]The federal social security regulations provide that disability claims are evaluated through a five-step approach. 20 C.F.R. § 404.1520. If, at any step, a claimant is determined to be disabled or not disabled, the analysis ends. *Id*. § 404.1520(a)(4). In this case, the ALJ determined that Brymer had not engaged in substantial gainful activity after January 1, 1999; that she was severely impaired; and that her impairments did not meet or equal an impairment listed in 20 C.F.R. pt. 404, subpart P, app. 1. *See id*. § 404.1520(b)-(d). Since these first three steps did not yield a conclusion,

20 C.F.R. §§ 404.1520(e), 404.1567(b).  Therefore, the ALJ determined that Brymer was not disabled.  In reaching this conclusion, the ALJ stated that he "carefully considered all the documents identified in the record as exhibits, the testimony at the hearing and the arguments presented."  The ALJ cited numerous exhibits in his decision, including many of the doctor's reports discussed above.  The ALJ gave reasons for discrediting some of the reports that tended to show that Brymer had a disability, including those offered by Dr. Ball, Dr. Supan, the Fortwood Center, and the Optima Health Center.  For the purposes of this appeal, it should be noted that the ALJ referred to Dr. Mullady's report only once in his discussion, stating: "The only mention [of diabetes] is made by consultative examiner Dr. Thomas Mullady who reports diabetes by history."

## II.

Linda Brymer filed her application for social security DIB on November 12, 1998.[4]  The application was denied, both upon initial review and upon reconsideration.  Brymer requested a hearing before an ALJ, and one was held on December 13, 1999.  The ALJ issued his decision on June 1, 2000.  The Appeals Council of the Social Security Administration denied Brymer's

---

the ALJ proceeded to evaluate Brymer's residual functional capacity, "based on all the relevant medical and other evidence" in the case record.  *Id*. § 404.1520(e).  Brymer does not contest the ALJ's determinations as to the first three steps of the analysis.

[4]It should be noted that Brymer also applied for supplemental security income benefits, which are paid only to the spouse of the deceased.  *See* 20 C.F.R. § 416.542(b)(1).  Brymer was divorced from her spouse in 1988 and never remarried.  Sharon Dykes did not assert any basis for standing to pursue this claim, and the appellant concedes in her brief that supplemental security income benefits are not involved in this appeal.

request for review of the decision on September 27, 2001, thereby giving the ALJ's decision final status as the decision of the Commissioner of Social Security.

In November 2001, Brymer appealed the ALJ's decision to federal district court. United States Magistrate Judge William B. Carter issued a report and recommendation on Brymer's case in January 2003, recommending that because the Commissioner's decision was not supported by substantial evidence, the decision should be reversed and remanded. The Commissioner filed objections to the report and recommendation; Brymer responded; and on March 28, 2003, United States District Judge R. Allan Edgar rejected the report and recommendation, concluding that "the record contains substantial evidence to support the ALJ's decision." Brymer moved to alter or amend the district court's judgment pursuant to Fed. R. Civ. P. 59(e), but the district court denied her motion on June 16, 2003. Brymer appealed to this court on August 13, 2003.

**III.**

When reviewing the Commissioner's decision on whether a claimant is disabled, this court is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the ALJ complied with applicable legal criteria. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997); *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). Even if there is substantial evidence in the record to support an opposite conclusion, the ALJ's decision should be affirmed as long as it too is supported by substantial evidence. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...."). Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).  Judicial review of the ALJ's findings must be based on the record as a whole, and therefore this court can consider any evidence in the record.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th. Cir. 2001).

At the fourth step of the sequential approach described in 20 C.F.R. § 404.1520, it is the claimant's burden to show that she is unable to perform her previous type of work.  *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987).  Here, the ALJ determined that Brymer had not met this burden.  Brymer's argument on appeal is that the ALJ's failure to explain why he rejected Dr. Mullady's assessment of Brymer's condition is error requiring this court to reverse the Commissioner's decision.[5]  Specifically, Brymer argues that Dr. Mullady's analysis of how much she could walk, stand, and lift during an eight-hour day constituted a determination that Brymer was able to perform only sedentary work, not light work, under 20 C.F.R. § 404.1567.  If Brymer were limited to sedentary exertion, and considering Brymer's age and education, the medical-vocational guidelines would direct a finding of "disabled."  *See* 20 C.F.R. pt. 404, subpart P, app. 2, rule 201.14.  Therefore, Brymer argues, if the ALJ had given credence to Dr. Mullady's report, the ALJ would have reached a different conclusion.  When one combines Brymer's argument with the standard of review for

---

[5]Brymer lists three arguments in the "statement of the issues" in her brief, but the latter two – that Dr. Mullady's opinion is consistent with other sources in the record, and that the failure to address his opinion cannot be rehabilitated via *post hoc* rationalizations – are merely variants or amplifications of her primary argument.  Brymer herself seems to recognize this, at least with regard to the second argument, conceding that whether Dr. Mullady's opinion is consistent with other sources is "technically not relevant to the legal error of the ALJ's failure to address Dr. Mullady's opinion."

this court on appeal, the argument can essentially be seen as an argument that the ALJ's finding was not supported by substantial evidence. However it is articulated, the argument fails.

**A.**

The Commissioner of Social Security is required to provide a statement discussing the evidence and reasons upon which the decision to deny benefits is based. *See* 42 U.S.C. § 405(b)(1). In her brief, Brymer fails to cite this circuit's most apposite precedent interpreting this requirement. In *Heston*, a claimant for DIB appealed the denial of benefits, arguing that the ALJ hearing her case failed to state reasons for rejecting the report of the claimant's treating physician. 245 F.3d at 531. In finding that the ALJ's decision was supported by substantial evidence in the record deriving from other medical sources, the court held that the ALJ's failure to even mention the treating physician's report was harmless error. *Id*. at 535-36. Likewise, the Eighth Circuit, confronting a fact situation similar to Brymer's, concluded that even if an ALJ cited only part of a doctor's report in his decision, the ALJ could still have considered (and rejected) another portion of the same report:

> Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered. In addition to the report by [the treating physician], the record also contains the opinions of two consulting physicians, neither of whom made any observations that would support [the claimant]'s allegations of complete disability. Thus, given the ALJ's explicit reliance on some of [the treating physician]'s conclusions, we find it "highly unlikely that the ALJ did not consider and reject" those portions of his report that [the claimant] now points to in support of her appeal.

*Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (citations omitted).

The present case involves the opinion of a consultative examiner, whose opinion is usually entitled to less weight than that of a treating physician. *See* 20 C.F.R. § 404.1527(d). Logically, then, if the refusal to even acknowledge the opinion of a treating physician was

harmless error in *Heston*, then the ALJ's failure in the present case to discuss thoroughly the opinion of a consultative examiner does not warrant reversal. After all, the ALJ did not ignore Dr. Mullady's opinion altogether; there was a reference to Dr. Mullady's treatment of Brymer in the ALJ's decision. Moreover, just as in *Craig*, the record in Brymer's case includes opinions from other treating physicians and doctors performing residual functional capacity assessments that support the ALJ's conclusion and contradict the opinion of Dr. Mullady.

Brymer asserts that an ALJ is required to articulate reasons for rejecting the opinion of a consultative examiner that the claimant is disabled. Brymer's reliance on *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517 (6th Cir. 1985), and similar cases for this proposition is misplaced. In *Hurst*, the ALJ failed to address a treating physician's assessment of the claimant's condition. *Id.* at 518-19. The court held that the decision was not supported by substantial evidence. *Id.* at 520-21. However, the court's holding was not based solely on the ALJ's failure to address the treating physician's assessment. Numerous other reasons were cited for the court's conclusion, including: that the Agency relied on potentially fraudulent consultative examinations; that the ALJ incorrectly characterized some of the physician's earlier reports as contradictory to her subsequent assessment; and that the ALJ incorrectly dismissed objective medical findings. *See id.* at 519-21. Also, *Hurst* involved a treating physician, not a consultative examiner. *Hurst* thus does not govern this case; *Heston* does, and the ALJ's failure in the present case to explain why he disregarded part of the opinion of a consultative examiner does not warrant reversal.

**B.**

Even if the ALJ committed error in failing to explicitly reject Dr. Mullady's assessment, the error is harmless, as the fundamental question for this court is whether the ALJ's decision is

supported by substantial evidence. *See Heston*, 245 F.3d at 535-36. A few examples from the record, most of which were cited by the ALJ in his decision, will suffice to demonstrate that substantial evidence supports the finding that Brymer was not disabled. Dr. Fulbright's assessments of Brymer's neck and back pain in August 1999 indicate that her pain had subsided, and this conclusion was affirmed by Dr. Ball in October of that year. Dr. Ball's reports did not suggest that any of Brymer's conditions would affect her ability to work, and he even indicated that Brymer's ailments were improving. Similarly, although Brymer ruptured her Achilles tendon in March 1999, her doctor reported that by July Brymer had responded well to treatment. The doctor released Brymer from a follow-up appointment. In the same month, another doctor stated that Brymer had responded well to medication for her "mild to moderate obstructive airways disease," and she also showed "good clinical response" with regard to her sleep apnea. Evidence indicating that the claimant's impairments can be controlled with medication can serve as substantial support for an ALJ's conclusion. *See Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

A final example of the evidence supporting the finding that Brymer was not disabled is provided by Dr. Mullady's report itself. Dr. Mullady's report asserted that Brymer had normal range of motion on her cervical spine and all joints other than her lower back; normal gait, balance, and grip strength; and no sensory deficits. In addition, Dr. Mullady advised that Brymer could "stand and/or walk for a total of *at least* two hours in an 8 hour workday." (Emphasis added.) Even though Brymer reads this opinion as limiting her to sedentary work, it could be also interpreted as allowing the "good deal of walking or standing" required by light work, thereby yielding the conclusion that Brymer was not disabled. *See* 20 C.F.R. § 404.1567(b). In any event, while the ALJ did not explicitly address the parts of Dr. Mullady's

opinion that were favorable to Brymer's claim, he also did not address these portions of Dr. Mullady's opinion that would have tended to disprove Brymer's claim. The information that undermines Brymer's claim augments the evidence underlying the ALJ's decision, which, taken together, is substantial.

## IV.

For the foregoing reasons, we affirm the district court's decision.